E-FILED
Wednesday, 20 September, 2017  02:00:05 PM
Clerk, U.S. District Court, ILCD

IN THE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF ILLINOIS

PEORIA DIVISION

CLARENCE POWELL,

    Plaintiff,

v.                                              Case No. 1:16-cv-01452-JES-JEH

ILLINOIS DEPARTMENT OF
CORRECTIONS,

    Defendant.

**Order**

    Before the Court is the Defendant, Illinois Department of Corrections' ("IDOC"), Motion to Dismiss for Failure to State a Claim (D. 24)[1] and the Plaintiff, Clarence Powell's, Response. (D. 29). The Defendant has also provided a supporting memorandum. (D. 25). For the reasons stated, *infra*, the Defendant's motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

    In April 2016, the Plaintiff filed his Complaint against the Defendant. (D. 1). His Amended Complaint, filed the following day, included the following counts: Count I, Harassment pursuant to Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. § 2000e(5) ("Title VII") and 42 U.S.C. § 1981 ("Section 1981"); Count II, Disparate Treatment Under Title VII and Section 1981; and Count III, Retaliation Under Title VII. (D. 5 at pp. 22-24). The Plaintiff has since

---

[1] Citations to the Docket in this case are abbreviated as "D. __."

1

conceded that his section 1981 claims are barred by the Eleventh Amendment and "voluntarily dismiss[es] those claims." (D. 29 at pg. 2). Thus, the Plaintiff's remaining claims are Retaliation, Disparate Treatment, and Harassment, brought exclusively under Title VII.

The Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") charge on November 24, 2015 alleging the Defendant racially discriminated against him, in violation of Title VII. (D. 25-1). In the particulars, he stated wholly as follows:

> I began my employment with Respondent on or about November 8, 1999. My current position is Correctional Officer. During my employment I was subjected to continuous racial harassment and disciplined, while other non-Black employees were not disciplined.
>
> I believe I have been discriminated against based on my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

*Id.* The charge form, EEOC Form 5, has multiple boxes for petitioners to allege the basis for their discrimination charge. Retaliation was one of the options on the form. The Plaintiff only marked the box for race discrimination. *Id.*

In the Plaintiff's Amended Complaint, he alleged a multitude of facts he claims pertain to his race-based harassment, disparate treatment, and retaliation by the Defendant between 2006 and 2015 while he was a correctional officer at Defendant's Pontiac Correctional Facility ("PCF"). (D. 5). The Plaintiff states that he is an African-American and that several of his superiors at IDOC violated his rights under, *inter alia*, Title VII. He named the following specific PCF employees as defendants: "Lieutenant Duane Beal, Lieutenant Benny Dallas, Lieutenant Eugene Masching, Lieutenant Shawn Holmes, Major James Blackard, Major Susan Prentice, Superintendent Michael Melvin, Warden Guy Pierce, and Warden Randy Pfister[.]" *Id.* at pg. 2.

The Plaintiff describes several events during his time as an employee at PCF in his Amended Complaint. He claims his allegations all support his individual claims of harassment,

disparate treatment, and retaliation. In particular, he claims: (1) Lieutenant Beal threatened to lynch him; (2) Lieutenants Masching and Dallas harassed him repeatedly, and eventually retaliated against him for reporting them; (3) Masching continued to harass him for reporting his behavior to IDOC authorities; (4) Masching authored and posted a mock memorandum with the Plaintiff's picture on it and a racial slur; (5) Superintendent Melvin discriminated against him by disciplining him for taking leave which he was entitled to take under the Family Medical Leave Act of 1993 ("FMLA") 29 U.S.C. § 2612; and (6) the harassment against him is part of PCF's broader scheme to intentionally discriminate against African-American correctional officers. (D. 5).

First, the Plaintiff alleges that in January 2014, while Beal was his direct supervisor, Beal told him "he would 'slap the black off [the Plaintiff's] face' and that he would 'hang [the Plaintiff] from an oak tree.'" *Id.* at pg. 4. The Plaintiff also claims Beal consistently made these and other similar comments to him from January 2013 until January 2014. The Plaintiff eventually reported Beal to IDOC's Office of Affirmative Action ("OOAA"). His complaint was substantiated and IDOC suspended Beal for 20 days.

The Plaintiff also alleges that throughout 2006, Dallas and Masching "repeatedly made derogatory remarks about [his] race in his presence." *Id.* at pg. 6. The Plaintiff asserts that after he reported Dallas and Masching to the OOAA for their remarks, they retaliated against him in "mid-2007" by assigning him to a unit where inmates were allowed to smoke, exacerbating his asthma. *Id.* at pg. 8. Months later, smoking was banned in the facility.

According to the Plaintiff, however, Masching continued to make racially derogatory remarks to him. The Plaintiff says he regularly reported Masching for his behavior through IDOC's proper channels in the "late spring and summer of 2015," but his reports resulted in no discipline and actually intensified Masching's harassment efforts. *Id.* at pg. 9. Masching's

3

harassment allegedly involved hiding the Plaintiff's work equipment and regularly following him in a "hyper-vigilant[]" manner that was intended to intimidate him. *Id.* at pg. 10. The Plaintiff also alleges Masching retaliated against him "for several years, including 2015" by "giving him negative performance evaluations even though [his] work at IDOC was always exceptional." *Id.* at pg. 12.

In response to the Plaintiff reporting Masching's behavior, he claims Masching filed a "false" report against him in August 2015, in which he implicated the Plaintiff for being found "in a relaxed position" while on duty. *Id.* at pg. 11. Major Blackard and Major Prentice conducted an Employee Review Hearing ("ERH") to assess Masching's report. The Plaintiff presented evidence at the hearing suggesting that he was either about to make a phone call or had just completed one at the time he was accused of being in a relaxed position. The ERH concluded that the Plaintiff violated IDOC regulations by being in a relaxed position, as alleged, and suspended him for one day. According to the Plaintiff, his suspension was later rescinded. The Plaintiff also alleges that sometime in 2014, correctional officer Thomas Scott told him that he heard Masching say he could "predict how long a black CO would stick around before resigning" once he was done harassing them. *Id.* at pg. 12.

Next, the Plaintiff alleges that in September 2015 there was a fake memorandum posted in a common area at PCF. The memorandum was printed on official IDOC letterhead, the Plaintiff's official IDOC identification photograph was printed on it, and there was a handwritten note that said "fucking nigger" with an arrow drawn from the phrase to the Plaintiff's photograph. The memorandum also purported that, per the warden, the Plaintiff was not allowed on the premises on September 23, 2015. Legitimate memorandums of this kind, minus racial insults and profanity, are commonly posted to remind on duty supervisors when specific staff members are suspended.

4

The Plaintiff reported the fake memorandum immediately after he removed it from the wall and made himself a copy of it. The matter was investigated, but it was never determined who was responsible for creating and posting the fake memorandum. The Plaintiff stated that Masching was present, as an on-duty supervisor, when he found the memorandum. He also claims that only supervisors can access official IDOC letterhead and identification photographs.

Plaintiff further asserts that from approximately September 2013 to February 2014, Superintendent Melvin disciplined him for taking time off of work. The Plaintiff claims the time he took off was approved by virtue of an "FMLA notice" approved by a state of Illinois FMLA coordinator, which he provided to Melvin. *Id.* at pg. 15. According to the Plaintiff, Warden Pierce eventually prevented Melvin from disciplining him and these incidents were expunged from his record. *Id.* at pg. 16.

Finally, the Plaintiff also claims Masching, Blackard, and Prentice subjected him to "false discipline" which was "motivated by animus toward [him] due to his race, and also constituted retaliation for [his] complaints against white management for the racial discrimination and harassment directed at him at Pontiac." (D. 5 at pg. 12). This is part of his broader argument that PCF is attempting to force African-American correctional officers to quit their jobs. He alleges they collaborated in their efforts, which "reveals how the all-white, upper-level management systematically refuses to discipline and, thus, authorizes and encourages racial harassment and discrimination at Pontiac." (D. 5 at pg. 12). The Plaintiff also makes several general allegations about the disparate treatment that African-Americans receive at PCF in comparison to their white counterparts in terms of promotion, disciplinary treatment, and approval for vacation. *Id.* at pg. 16-21. He also said that he complained to management "repeatedly" about the regular use of racial slurs by white supervisors at PCF. The Plaintiff cites no specific instances in this section of his

Amended Complaint where he personally suffered as a result of the discrepancies he complains about. The Plaintiff concedes, however, that he is not bringing claims on anyone else's behalf. (D. 29 at pg. 15).

In February 2017, the Defendant filed a Motion to Dismiss the Plaintiff's Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). (D. 24). The Defendant argues, *inter alia*, that the Plaintiff's Amended Complaint failed to state claims upon which relief can be granted. Specifically, as it pertains to the Plaintiff's Title VII counts, the Defendant argues: (1) the Plaintiff's retaliation claims should be dismissed because he failed to properly exhaust them; (2) the Plaintiff's disparate treatment claims should be dismissed because he does not allege an actionable adverse employment action within Title VII's 300 day statute of limitations; and (3) the Plaintiff's harassment claim should also be dismissed as it is barred by the 300 day statute of limitations. (D. 24 at pg. 2-3).

## **LEGAL STANDARD**

In reviewing the Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts the Plaintiff's factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Allegations stated in the form of legal conclusions, however, are insufficient to survive a motion to dismiss. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012). A complaint must contain a short and plain statement of the plaintiff's claim, sufficient to show entitlement to relief and to notify the defendants of the allegations against them. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). This standard is met if the plaintiff describes in sufficient factual detail enough to suggest a right to relief beyond a speculative level. *Id.; Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *EEOC v. Concentra Health Srvs.*, 496 F.3d 773, 776 (7th Cir. 2007).

More specifically, a complaint must go beyond "mere labels and conclusions" to contain "enough to raise the right to relief above the speculative level." *G&S Holdings, LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 537-38 (7th Cir. 2012). In short, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (emphasis in original).

## ANALYSIS

### A

First, the Court addresses the Defendant's argument that the Plaintiff's Title VII retaliation claim should be dismissed. (D. 25 at pp. 5-7). The Defendant asserts that this count is insufficient because the Plaintiff did not file an EEOC charge alleging retaliation and therefore failed to properly exhaust his administrative remedies as required. *Id.* The Plaintiff responds by arguing that the Defendant's point on this issue impermissibly relies on a document outside of his Amended Complaint, his own EEOC charge. (D. 29 at pg. 8). He asserts that the Defendant's reliance on the charge is "entirely improper as a matter of law." *Id.* at pg. 8.

Indeed, the Plaintiff did not attach his EEOC charge to his Amended Complaint, but he did reference it therein. (D. 5 at pg. 3). The Defendant attached the Plaintiff's EEOC charge to its Motion to Dismiss. (D. 25-1). As a general rule, motions to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b) are limited to factual allegations contained in the complaint and the attached exhibits. *See* Fed. R. Civ. P. 12(d) (documents outside the complaint may not be considered without converting the motion to dismiss into a motion for summary judgment). The Seventh Circuit, however, has already found the Plaintiff's argument entirely without merit. *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) (calling this precise argument

7

"frivolous"). Accordingly, the Court considers the Plaintiff's EEOC charge in assessing the Defendant's Motion.

Plaintiffs are generally limited to bringing Title VII claims against a defendant which were either: (1) included in their prior EEOC charges; or (2) are similar to or reasonably related to the allegations from the charge and growing out those allegations. *Huri v. Office of the Chief Judge of the Circuit Court of Cook County*, 804 F.3d 826, 831-32 (7th Cir. 2015); *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). The latter criteria is satisfied when "there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Id.* At a minimum, this requires that the charge and the complaint describe the same conduct and implicate the same individuals. *McKenzie v. Illinois Dep't of Transp.*, 92 F.3d 473, 481 (7th Cir. 1996).

As discussed above, the Plaintiff did not check the box to allege retaliation on his EEOC charge. This, in and of itself, is not enough for the Court to find that the Plaintiff failed to allege retaliation on the charge. *Ajayi v. Aramark Bus. Svcs., Inc.*, 336 F.3d 520, 528 (7th Cir. 2003) (declining to rest their decision "on an omitted checkmark"). Rather, the Court must also look to the facts alleged in the charge in order to ascertain whether they are similar or reasonably related to the Plaintiff's allegations of retaliation in his Amended Complaint. *Huri*, 804 F.3d at 831-32. The Defendant cites *McKenzie*, arguing that, generally speaking, a plaintiff who did not assert a retaliation claim in their EEOC charge cannot file a lawsuit based on retaliation. (D. 25 at pg. 6). More precisely stated, *McKenzie* stands for the proposition that plaintiffs who allege they suffered retaliatory acts prior to the filing of their EEOC charge cannot utilize those events—if they were

8

not referenced in their charge—as the basis for a retaliation claim in their subsequent complaint. 92 F.3d at 483.

The Plaintiff argues his retaliation claim should proceed because it is reasonably related to his charge of discrimination and "discovery will reveal that the EEOC investigation unearthed factual allegations of Masching's retaliation against" him, which put the Defendant on notice of the retaliation claim. (D. 29 at pg. 11). The Plaintiff also clarified that the retaliation count in his Amended Complaint "stem[s] from Masching's constant race-based harassment of plaintiff, which led to Masching's retaliatory conduct against plaintiff (culminating in Masching's false discipline of plaintiff and attempts to get plaintiff fired) after plaintiff reported Masching to IDOC's upper management." *Id.* at pg. 11. By the Plaintiff's own admission, Masching's allegedly false discipline of the Plaintiff occurred before he filed his EEOC charge in November 2015. As a result, this event cannot form the basis for the Plaintiff's retaliation claim.

Masching's alleged attempts to get the Plaintiff fired involve the multiple negative performance reviews he claims Masching gave him, including one in 2015. (D. 5 at pg. 12). It is possible that the Plaintiff's negative performance reviews constitute a retaliatory adverse employment action. *See Brown v. Advocate South Suburban Hosp.*, 700 F.3d 1101, 1108 (7th Cir. 2012). As such, the Plaintiff's retaliation claim is sufficient to survive the Defendant's Motion to Dismiss. While the Plaintiff's vague accusation of racial discrimination in his EEOC charge does not allege any retaliatory acts of discipline on the part of the Defendant, it is possible that the Defendant's allegedly racially discriminating conduct simultaneously involved retaliatory acts. While racial discrimination under Title VII does not necessarily encompass acts of retaliation (*Burlington N. & S.F.R. Co. v. White*, 548 U.S. 53, 63 (2006)), such information could reasonably be expected to come to light during an investigation into the Plaintiff's racial

9

discrimination charge. Thus, the Defendant's Motion, as it pertains to the Plaintiff's Title VII retaliation claims, is DENIED.

B

Next, the Court addresses the Defendant's argument that the Plaintiff's disparate treatment claim should be dismissed. (D. 25 at pp. 7-11). The Defendant asserts that the Plaintiff failed to allege an actionable adverse employment action within Title VII's 300-day statute of limitations. *Id.* 42 U.S.C. § 2000e-5(e)(1) requires plaintiffs to file a charge of employment discrimination with the EEOC within 300 days of the alleged unlawful employment practice. In the Defendant's view, allegations that the Plaintiff asserts took place before January 28, 2015 are time-barred since the Plaintiff filed his charge of discrimination with the EEOC on November 24, 2015.

The Plaintiff maintains that his disparate treatment claim is properly stated. (D. 29 at pp. 12-15). First, he argues that the Defendant's argument on this issue impermissibly relies on his EEOC charge. (D. 29 at pp. 12-13). For the reasons previously stated, the Court finds this argument insufficient and will not address it further. The Plaintiff also asserts that his claim is properly before the Court and should survive on the merits. *Id.* at pp. 13-15.

According to the Defendant, the Plaintiff is alleging several discrete incidents. If so, these incidents cannot overcome the 300 day statute of limitations, even if they are related. *See Nat'l Railroad Passenger Corp. v. Abner Morgan, Jr.*, 536 U.S. 101, 114 (2002). This holds true in disparate treatment claims regardless of whether the Plaintiff alleged a continuous course of conduct on the part of the Defendant. *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014).

The Plaintiff stated in the particulars of his EEOC charge that during his employment he was continuously racially harassed and disciplined, while other employees that were not African-

American were not subject to the same treatment. (D. 25-1). In his Amended Complaint, the Plaintiff specifically alleges the following acts occurred sometime after January 28, 2015: (1) Masching's continued harassment of him in the Spring and Summer of 2015; (2) the false report filed against him for assuming a relaxed position on duty; (3) the fake memorandum posted in a common area with his picture and a racial slur on it; and (4) the Plaintiff's repeated complaints to management about his supervisors' use of racial slurs while working at PCF.

These accusations could, arguably, constitute acts of disparate treatment. Their presence allows for the possibility that at least some of the acts which allegedly violated the Plaintiff's rights under Title VII after January 28, 2015, subjected him to disparate treatment. Thus, the Plaintiff's disparate treatment count is sufficiently pleaded. The Defendant's Motion, as it pertains to the Plaintiff's Title VII disparate treatment claims, is therefore DENIED.

## C

Lastly, the Court addresses the Defendant's argument that the Plaintiff's harassment claim should be dismissed. (D. 25 at pp. 11-12). Specifically, the Defendant asserts that the Plaintiff's Title VII harassment claims should be dismissed because "the majority of the incidents he pleads are time-barred, and the remaining incidents do not rise to the level of Title VII harassment." *Id.* at pg. 11. Again, in the Defendant's view, the allegations the Plaintiff asserts took place before January 28, 2015 are time-barred.

Unlike disparate treatment claims, harassment claims alleging a hostile work environment, as the Plaintiff does here, are not subject to the 300-day period. In such claims, incidents outside the 300 day statute of limitations are allowed "so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Morgan,* 536 U.S. at 122; *see also Adams*, 742 F.3d at 730 (citing same).

The Plaintiff alleges the Defendant's racial harassment began as early as January 2014 when he asserts Beal threatened to hang him in such a manner that "carried racially-charged connotations of intimidation and lynching." (D. 5 at pg. 4). This is clearly outside the 300 day statute of limitations. The Plaintiff's Title VII harassment claim need not stand or fall entirely on the conduct that he alleges in his complaint occurred between January 28, 2015 and his last day of employment at PCF, sometime in 2015. As noted earlier, the Plaintiff included in his Amended Complaint multiple allegations which he claims transpired sometime after January 28, 2015. Those allegations, are part of the same alleged unlawful employment practices they and, as alleged, fall within the appropriate time period. As such, the Defendant's Motion, as it pertains to the Plaintiff's Title VII harassment claims, is DENIED.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion (D. 24) is GRANTED in part and DENIED in part. In summary, the Defendant's Motion is GRANTED in respect to all counts, minus the Plaintiff's Title VII retaliation, disparate treatment, and harassment claims.

*It is so ordered.*

Entered on September 20, 2017

  s/James E. Shadid
James E. Shadid
Chief United States District Judge