E-FILED
Tuesday, 07 August, 2018  10:59:20 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DISTRICT

CLARENCE POWELL,              )
                             )
        Plaintiff,            )       Case No. 1:16-cv-01452-JES-JEH
                             )
             v.              )       Honorable Judge James Shadid
                             )
ILLINOIS DEPARTMENT OF        )       Magistrate Judge Jonathan Hawley
CORRECTIONS,                  )
                             )
        Defendant.

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

#### Introduction

Defendant Illinois Department of Corrections ("IDOC") does not deny that

plaintiff Clarence Powell was subject to racial harassment during his employment with

IDOC.  Nor could it.  Mr. Powell was threatened by his supervisor, Lieutenant Duane

Beal, that Beal would "slap the black off your face" and "hang you from an oak tree."

Lientenant Benny Dallas told Mr. Powell he must be a member of a black gang.  When

Mr. Powell complained about that comment and Dallas was suspended for a day,

Lieutenant Eugene Masching said to Mr. Powell, "I'm going to get you."  A

memorandum was posted in a common area with a photo of Mr. Powell and an arrow

drawn towards that photo with the words "fucking nigger" written on it.  Lieutenant Beal

put his hands down the back of Mr. Powell's pants in an intrusive, unwarranted hands-on

search of his body.  Lieutenants Dallas and  Masching purposely assigned Mr. Powell to

the sole smoking unit at the Pontiac prison. despite Mr. Powell's protests – and

emergency room records – that assignment there severely aggravated his asthma.  Mr.

Powell was falsely accused of sleeping on the job by Lieutenant Masching and was stalked by Masching while Powell did his job.

Confronted with these facts, IDOC moves for summary judgment advancing a statute of limitations argument it has made before and the Court has already rejected. It argues that Lieutenants who had the power to transfer Mr. Powell and force him into working conditions that adversely effected his health do not qualify as supervisors under Title VII. It argues that each act of harassment must be viewed in isolation, rather than as a whole, and that acts of harassment are not actionable if they were later reversed. And it argues that a jury must find that it took remedial action that was appropriate and effective. As we show below, none of these are sound grounds for summary judgment.

## I. Legal Standards on a Motion for Summary Judgment

A motion for summary judgment should be denied if there are genuine issues of material fact. Fed.R.Civ.P. 56(c). The Court must consider the evidence as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Hess v. Reg–Ellen Mach. Tool Corp.*, 423 F.3d 653, 658 (7th Cir.2005).

## II. Response to Defendant's Statement of Undisputed Material Facts

In defendant's memorandum in support of its motion for summary judgment, defendant lists what it states are undisputed material facts. As required by the Local Rules, we respond here to those statements.

Undisputed material facts.

The following facts on defendant's list are conceded to be undisputed and material: Nos. 1-5, 9-13, 15-19, 21, 22, 24, 27, 29-33. 35-45, 50-51, 58-62, 68-71, 77, 84-86, and 94-99.

Disputed material facts.

The following facts on defendant's list are disputed:

Nos. 81 and 83. As Mr. Powell states in his declaration, it is more probable than not that the "fucking nigger" memorandum was put on the wall by Lieutenant Masching. Lieutenant Evans and Mr. Powell found that Lieutenant Masching had stored a series of lock-out memoranda in his desk with pictures of correctional officers on them. There was no reason for Masching to have these memos other than to post them with derogatory writing on them, as Mr. Powell's memo had been posted. (Powell Decl., Par. 21, Powell Dep. pp. p. 177, l. 10 – p. 180, l. 3; p. 185, l. 24 – 186, l. 6.)

Undisputed immaterial facts.

The following facts on defendant's list are undisputed but immaterial, for the following reasons:

No. 6: The existence of a collective bargaining agreement and a grievance process does not relieve IDOC of its liability for racial harassment.

No. 7: How IDOC categorizes Lieutenants, and how they are represented by AFSCME, is not the test for determining whether they are supervisors under Title VII. As discussed below, the Lieutenants who dealt with Mr. Powell are considered to be supervisors under Title VII because they had the power to transfer him to work assignments that adversely affected his working conditions. See Powell Decl., Pars. 8-11.

No. 8:  Lieutenants' lack of unilateral power to hire, fire, promote, demote, or discipline correctional officers are not the sole indicia of whether they qualify as supervisors under Title VII.  As discussed below, the Lieutenants who dealt with Mr. Powell are considered to be supervisors under Title VII because they had the power to transfer him to work assignments that adversely affected his working conditions.  Powell Decl., Pars. 8-11.

No. 14:  No discriminatory action by Lieutenant Davis is alleged and his approval of plaintiff's attendance at the NABCJ convention is irrelevant.

No. 20:  IDOC's claim that Mr. Powell's allegation of retaliation was not substantiated does not preclude a jury from finding that his assignment to the Upper PC housing unit was retaliatory and an action of racial harassment.

No. 23:  The fact that Dallas and Masching did not talk about Mr. Powell's complaint against Dallas does not preclude a jury from finding that the assignment of Mr. Powell to the Upper PC housing unit, where smoking was allowed, aggravating Mr. Powell's asthma, by Lieutenant's Dallas and Masching, was retaliatory and racially harassing.  Indeed, it is undisputed that after Powell reported Dallas's statement and Dallas was disciplined, Masching said to Powell, "I'm going to get you."   (See def.'s no. 21.)

No. 25:  Mr. Powell's relief from assignment to the Upper PC Housing Unit, where smoking was allowed, was not the result of any action by IDOC, Dallas, or Masching to end the retaliatory and harassing assignment of Mr. Powell to a unit where smoking was allowed.

No. 26:  The movements of Dallas and Masching to other jobs, where Mr. Powell did not encounter them, was not the result of any action by IDOC to protect Mr. Powell from their harassment.

No. 34:  The transfer of Beal to a job where Mr. Powell no longer encountered him was not the result of any action by IDOC to protect Mr. Powell from his harassment.

Nos. 46-48:  The assignment to C-Dorm, to the extent that it was a less desirable assignment, is not a significant part of Mr. Powell's claims of racial harassment.

No. 49:  Lieutenant Masching's statements as to why he assigned plaintiff to C-Dorm does not preclude a jury from finding that he transferred Mr. Powell to C-Dorm so he could hyper-vigilantly watch over Mr. Powell in a harassing manner.  See Powell Decl., Pars. 16-17.

Nos. 52-57:  Masching's testimony about the reasons for his actions does not preclude a jury from finding that he was in fact engaging in hyper-vigilant observation of Mr. Powell in an effort to harass him.  Powell Decl., Pars. 16-17.

No. 63:  Lieutenant Evans' three-day suspension, in comparison to Mr. Powell's one-day suspension, is explained by the fact that Evans was a Lieutenant and as a supervising officer his alleged misconduct was considered to be more serious.

No. 64:  The reversal of Mr. Powell's suspension does not take away from the fact that the accusation against him filed by Masching was false, racially harassing. and put Mr. Powell at jeopardy for discipline which was not warranted.  Furthermore, relevant case law, described below, shows that an adverse action may be the basis for a harassment claim, even if it is later reversed.

No. 65-66:  The content of Mr. Powell's performance reviews is not a substantial part of Powell's claims for racial harassment.

No. 67:  Masching's caution in not making explicitly racist statements to Mr. Powell does not preclude a jury from finding that Masching was harassing Mr. Powell.

Nos. 72-76 and 78-83:  The facts stated by IDOC do not take away from the fact that a memorandum with Mr. Powell's photo was posted with the words "fucking nigger" on it, with an arrow drawn to Mr. Powell's face, and IDOC took no action to counsel employees about it or take any other corrective action.  Powell Decl.,, Pars. 22-23.

Nos. 87-90:  The facts stated by IDOC do not take away from the fact that Superintendent Melvin gave Mr. Powell an attendance counseling for days Mr. Powell was entitled to take off for FMLA leave.  (Powell Decl., Par. 13.)  Furthermore, relevant case law, described below, shows that an adverse action may be the basis for a harassment claim, even if it is later reversed.

Nos. 91-93:  Complaints regarding promotions, transfers, or training are not a substantial part of Mr. Powell's claims of racial harassment.

<u>Additional material facts.</u>

The following are additional material facts:

1.  After Mr. Powell complained of racially harassing comments made by Lieutenant Dallas, in the presence of Lieutenant Masching, and Lieutenant Dallas was disciplined for those comments, Mr. Powell was assigned to the Upper PC Housing Unit by Lieutenants Dallas and Masching.  (Powell Decl., Pars. 7-11.)

2.  The Upper PC Housing Unit was the only unit in the prison where smoking was allowed.  (Powell Decl., Par. 9.)

3. Assignment there severely affected Mr. Powell's asthma, making him sick and sending him on more that one occasion to the emergency room. (Powell Decl., Par. 10.)

4. Mr. Powell complained to Lieutenants Dallas and Masching, and to supervisory authority at the prison, Major Quinley, that he should not be assigned to that unit because of his asthma but nonetheless they continued to assign him there. (Powell Decl., Par. 11.)

5. In 2015 Masching engaged in a practice of hyper-vigilantly watching over plaintiff. He sat in an unlit cafeteria and stared into the area where plaintiff worked for an hour at a time. He hid in the shower in plaintiff's unit, jumping out and surprising Mr. Powell when he went on his rounds. (Powell Decl., Par. 17.)

6. When Mr. Powell reported that a memorandum had been posted with his picture and the words "fucking nigger" written on it, with an arrow drawn to his face, IDOC took no corrective action. It did not counsel employees about the conduct or take any action to prevent it from recurring. (Powell Decl., Pars. 22-23.)

7. Despite the fact that Lieutenant Masching had threatened Mr. Powell "I am going to get you," (Powell Decl., Par. 6), IDOC put Mr. Powell under the direct supervision of Lieutenant Masching afterwards. (Powell Decl., Par. 16.)

<u>Argument</u>

Plaintiff Clarence Powell was subject to a continuous and pervasive course of racial harassment as a correctional officer at the Pontiac correctional facility – largely corroborated by IDOC's own description of the facts -- ranging from being told by a supervisor, Lieutenant Duane Beal, that he would "slap the black off your face" and

"hang you from an oak tree" (Powell Decl. Par. 15)  to having a memorandum posted in a

public place with the words "fucking nigger" written on it, with an arrow pointed to Mr.

Powell's photograph.  (Powell Decl. Par. 20).  After Powell complained of racially

harassing remarks by Lieutenant Benny Dallas, made in front of Lieutenant Eugene

Maching (Powell Decl. Par. 4-5), Masching said to Powell, "I am going to get you,"

(Powell Decl. Par. 6) and Mr. Powell was assigned to the sole unit at the prison where

smoking was allowed, aggravating Powell's asthma, despite Powell's warnings that he

should not be assigned there, because of his health.  (Powell Decl. Pars. 7-11.)  When

Powell took authorized FMLA leave because of his asthma, he was inappropriately

reprimanded.  (Powell Decl. Pars. 12-13.)  When Masching resumed his supervisory role

over Mr. Powell – even though he had threatened Mr. Powell, "I am going to get you" --

he would stalk Mr. Powell while he performed his job duties, hyper-vigilantly watching

him and hiding in the showers of Mr. Powell's unit to spy on him.  (Powell Decl. Par. 16-

17.)  Masching took further action against Mr. Powell by filing a false report claiming

that Powell was sleeping on the job, leading to assessment of a suspension.  (Powell Decl.

Par. 18-19.)

Despite this record of racial harassment, IDOC claims it is entitled to summary

judgment on Mr. Powell's harassment claims, presenting four major arguments.  First,

IDOC re-asserts an argument about the statute of limitations that the Court already

rejected in denying IDOC's earlier motion to dismiss, an argument that is contradicted by

Supreme Court case law.  Second, IDOC argues that it is not responsible for the actions

of its Lieutenants because they supposedly are not "supervisors" within the meaning of

Title VII, ignoring the power of the Lieutenants – which they exercised – to transfer Mr.

Powell to a job assignment that significantly altered his working conditions and compromised his health.  Third, IDOC attempts to divide this course of conduct into separate parts, arguing that no single part is actionable, while it ignores the overall effect of the sum of those parts, and incorrectly argues that acts of harassment which are later reversed are not actionable.  Finally, IDOC argues that its remedial efforts were sufficient, ignoring the fact that the adequacy of its remedial actions is an issue for the jury.  As we show below, each of IDOC's arguments is wrong.

A.   IDOC's statute of limitations argument is incorrect.

IDOC argues that most of Mr. Powell's claims of racial harassment are time-barred because they took place more than 300 days before he filed his EEOC charges. He filed his charges on September 14, 2015 and November 24, 2015.  Three hundred days before September 14, 2015 is November 18, 2014.

There is no question – and IDOC does not dispute – that Mr. Powell claims actions of racial harassment that occurred within the 300 day charge-filing period, after November 18, 2014.  These include Lieutenant Masching's actions in 2015 stalking him in a hyper-vigilant manner  (Powell Decl. Pars. 16-17) , Lieutenant Masching filing a false charge of sleeping on the job against Mr. Powell in August, 2015 (Powell Decl., Par. 18),  and the posting, most probably by Lieutenant Masching (Powell Decl. Par. 21) of the memo with the words "fucking nigger" written on it in September, 2015.  (Powell Decl. Par. 20.)

The argument that earlier events are time-barred was rejected by this Court in ruling on IDOC's earlier motion to dismiss, which raised exactly the same argument that

IDOC advances now.  In its ruling denying IDOC's earlier motion to dismiss, the Court

wrote:

> Unlike disparate treatment claims, harassment claims alleging a hostile work
> environment, as Plaintiff does here, are not subject to the 300-day period.  In such
> claims, incidents outside the 300 day statute of limitations are allowed "so long as
> all acts which constitute the claim are part of the same employment practice and
> at least one act falls within the time period."  [*Nat'l R.R. Passenger Corp. v.]
> Morgan*, 536 U.S. [101 (2002) at 12[2]; *see also Adams* [*v. City of Indianapolis*],
> 742 F.3d [720 (7th Cir. 2014) at 730 (citing same).

(Order, 9/20/2017 at 11.)  This is entirely consistent with governing Supreme Court and

Seventh Circuit case law.  The Seventh Circuit wrote in *Isaacs v. Hill's Pet Nutrition,*

*Inc.*, 485 F.3d 383, 385 (7th Cir. 2007):

> The Supreme Court treats a hostile work environment as one unlawful
> employment practice. See *National Railroad Passenger Corp. v. Morgan,* 536
> U.S. 101, 115-21, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). The employee may
> complain about any of the constituent acts, no matter how long ago they occurred,
> as long as the charge is filed within 300 days of any harassing act.

    Thus, IDOC's statute of limitations argument is simply wrong as a matter of law.

Mr. Powell's allegations of racial harassment constituting a continuous course of

conduct, into the limitations period, are not time-barred.

B.  The Lieutenants who harassed Mr. Powell were supervisors, as that term is used in
construing Title VII.

    IDOC argues that it is not liable for the conduct of the Lieutenants who harassed

Mr. Powell because they were not "supervisors" as that term is used in construing Title

VII.  This argument ignores the power that Lieutenants had to transfer a correctional

officer like Mr. Powell to a job assignment that significantly changed the conditions of

his employment.  (Powell Decl. Par. 8.)  The Lieutenants in this case exercised that

authority by transferring Mr. Powell and assigning him to the Upper PC Housing Unit,

the only area in the prison where smoking was allowed, significantly aggravating his

asthma and damaging his health.  (Powell Decl. Pars. 7, 9-11.)

The Supreme Court set forth the relevant rules in *Vance v. Ball State University*,

570 U.S. 421 (2013).  The Court wrote in *Vance:*

> Under Title VII, an employer's liability for such harassment may depend on the
> status of the harasser. If the harassing employee is the victim's co-worker, the
> employer is liable only if it was negligent in controlling working conditions. In
> cases in which the harasser is a "supervisor," however, different rules apply. If the
> supervisor's harassment culminates in a tangible employment action, the employer
> is strictly liable.

*Id.,* at 424.  Referring to its earlier decisions in *Burlington Industries, Inc. v. Ellerth*, 542

U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) the Court

summarized its previous holdings:

> First, the Court held that an employer is vicariously liable "when a supervisor
> takes a tangible employment action," *Ellerth, supra,* at 762, 118 S.Ct. 2257;
> *Faragher, supra,* at 790, 118 S.Ct.—*i.e.,* "a significant change in employment
> status, such as hiring, firing, failing to promote, reassignment with significantly
> different responsibilities, or a decision causing a significant change in
> benefits." *Ellerth,* 524 U.S., at 761, 118 S.Ct. 2257.

*Id.,* at 428.  The Court went on to write:

> We hold that an employer may be vicariously liable for an employee's unlawful
> harassment only when the employer has empowered that employee to take
> tangible employment actions against the victim, *i.e.,* to effect a "significant
> change in employment status, such as hiring, firing, failing to promote,
> reassignment with significantly different responsibilities, or a decision causing a
> significant change in benefits." *Ellerth, supra,* at 761, 118 S.Ct. 2257.

*Id.,* at 430.

Accordingly, an employee is a "supervisor" for Title VII purposes, if the

employee is empowered to take tangible employment action, or materially adverse

employment action, against subordinate employees.  The Court of Appeals wrote in

*Valentine v. City of Chicago*, 452 F.2d 670, 678 (7th Cir. 2005) (reversing summary

judgment on hostile work environment claim):

> We agree with Valentine that there is a material question of fact as to whether
> DiTusa should be considered her supervisor for Title VII purposes. "[T]he
> essence of supervisory status is the authority to affect the terms and conditions of
> the victim's employment. This authority primarily consists of the power to hire,
> fire, demote, promote, *transfer,* or discipline an employee. Absent an entrustment
> of at least some of this authority, an employee does not qualify as a supervisor for
> purposes of imputing liability to the employer." *Parkins* [v. *Civil Contractors of
> Illinois, Inc.*], 163 F.3d [1027 (7th Cir. 1998)] at 1034 (emphasis added).

*See also Hall v. Bodine*, 276 F.3d 345 (7th Cir. 2002), *overruled on other grounds* in *Hill*

*v. Tangherlini*, 724 F.3d 965, 968 n.1 (7th Cir. 2013), at 355.

The court wrote in *Johnson v. Bristol-Myers Squibb Co.*, 2010 WL 3927651

(N.D.Ill 2010) at *3-4:

> The Seventh Circuit has treated "tangible employment action" and "materially
> adverse employment action" interchangeably defining one category as: Cases in
> which the employee is not moved to a different job or the skill requirements of his
> present job altered, but the *conditions* in which he works are changed in a way
> that subjects him to a humiliating, degrading, unsafe, unhealthful, or otherwise
> significantly negative alteration in his workplace environment—an alteration that
> can fairly be characterized as objectively creating a hardship, the classic case
> being that of the employee whose desk is moved into a closet. *Herrnreiter v.
> CHA*, 315 F.3d 742, 744–45 (7th Cir.2002) (emphasis in original); *see also Roby*
> [v. CWI, Inc., 579 F.3d 779 (7th Cir. 2009)] at 784 (significant change in working
> conditions constitutes tangible employment action).

A transfer to an adverse working environment, such as the transfer to the Upper

PC Housing Unit, where smoking was allowed, aggravating Mr. Powell's asthma and

significantly harming his health, is an adverse employment action. "An internal transfer

can be an adverse employment action if `accompanied by a negative change in the terms

and conditions of employment.' *Morris v. Lindau*, 196 F.3d 102, 113 (2d Cir. 1999)."

*Terry v. Ashcroft*, 336 F.3d 128, 144 (2d Cir. 2003). The Seventh Circuit has applied this

rule. *See Huff v. Sheahan*, 493 F.3d 893 (7th Cir. 2007) (denial of case leads and denial of

transfer created jury issue as to tangible employment action) at 901:

> Our own cases consistently have applied this standard. *See, e.g., Jackson v. County of Racine,* 474 F.3d 493, 501 (7th Cir.2007) (noting that liability is "strict" when the supervisor harassment is accompanied by an official action such "as discharge, demotion, or *undesirable reassignment*") [Emphasis added.]

*See also Passanti v. Cook County*, 689 F.2d 655, 671 (7th Cir. 2012), and *Bryson v.*

*Chicago State Univ.,* 96 F.3d 912, 916 (7th Cir. 1996).

In this case the Lieutenants who harassed Mr. Powell were supervisors, as that

term is used in Title VII, because they had the power to take tangible employment action

against him by transferring him to an assignment – the smoking unit of Upper PC South –

that materially injured his health and changed the terms and conditions of his

employment. As supervisors, IDOC is responsible for their actions. Summary judgment

cannot properly be granted based on IDOC's assertion that the Lieutenants in this case,

who harassed Mr. Powell, were not supervisors. *See Burlington Northern and Santa Fe*

*Ry. Co. v. White*, 548 U.S. 53, 70-71 (2006) (whether reassignment of job duties was

materially adverse action was question for jury).

C.  IDOC incorrectly attempts to analyze each incident of harassment separately and incorrectly argues that actions of harassment that are later reversed are not actionable.

IDOC advances its argument by looking at each incident of harassment that Mr.

Powell suffered and contending that each such incident, taken alone and looked at in

isolation, is not actionable. That is contrary to Seventh Circuit case law. In determining

whether an employer created a hostile working environment, courts are admonished to

look at the totality of the circumstances.  "Courts should not carve up the incidents of harassment and then separately analyze each incident, by itself, to see if each rises to the level of being severe or pervasive." *Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1045 (7th Cir. 2000).  *See also Hall v. City of Chicago*, 713 F.3d 325, 331 (7th. Cir. 2013).  Thus, the question is not whether Lieutenant Mashing falsely accusing Mr. Powell of sleeping on the job is independently actionable, or whether Superintendent Melvin reprimanding Powell for taking days off which he was entitled to take as part of his FMLA leave is independently actionable.  The question is whether these are harassing actions which, taken together with the other actions at issue in this case, created a hostile work environment.  As the court noted in *Moore v. Metropolitan Water Reclamation Dist. of Greater Chicago*, 2004 WL 2958769 (N.D.Ill. 2004) at *2, incidents "do not need to be independently actionable; the incidents need only contribute to the hostile work environment."

As part of its argument, IDOC argues that certain disciplinary actions taken against Mr. Powell are not actionable because they were later rescinded.  It notes that Superintendent Melvin's reprimand was expunged through the grievance process and that the suspension Mr. Powell received as a result of the false claim by Masching that he was sleeping on the job was reversed, after appeal, and reduced to a counseling.  But harassing actions that are later reversed are still harassing when they occur and still are actionable.  *See Ezell v. Potter*, 400 F.3d 1041, 1049 (7th Cir. 2005) (removal letter constituted adverse employment action even though it was withdrawn before it ever took effect as a result of union grievance); *Molnar v. Booth*, 229 F.3d 593, 600 (7th Cir. 2000) (negative evaluation was tangible employment action even though it was reversed six

14

months later); and *Barron v. University of Notre Dame Du Lac*, 93 F.Supp.3d 906, 914 (N.D.Ind. 2015) (initial denial of tenure was adverse employment action even though it was later reversed). A jury could reasonably find that Mr. Powell was harassed by being improperly denied leave and being falsely accused of a disciplinary violation, even if the supervisors who took those actions ultimately could not make them stick. False accusations of misconduct and improper denial of leave are actions of harassment, whether or not they are ultimately upheld. Whether they contributed to conduct severe or pervasive enough as to constitute a hostile work environment is generally a question of fact for the jury. *Johnson v. Advocate Health and Hospital Corp.*, -- F.3d --, 2018 WL 2753066 (7th Cir. 2018) at *8:

> The district court determined, as a matter of law, that the conduct complained of was not sufficiently severe or pervasive. We disagree. Whether harassment was so severe or pervasive as to constitute a hostile work environment is generally a question of fact for the jury. *Passananti*, 689 F.3d at 669. *See also, Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 310 (6th Cir. 2016); *Mosby–Grant v. City of Hagerstown*, 630 F.3d 326, 335 (4th Cir. 2010); *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 798 (10th Cir. 2007).

> Thus, IDOC's arguments that summary judgment is appropriate based on looking

at each act in isolation and because harassing actions were later rescinded are incorrect.

D. <u>Whether IDOC took effective and appropriate remedial action is a question for the jury.</u>

IDOC argues that it took adequate action, as best it could, to protect Mr. Powell from the racial harassment he suffered. But a jury could easily disagree. When Lieutenant Masching said to Mr. Powell, "I am going to get you," he was given only a counseling. (Powell Decl., Par. 6.) A jury could easily find that was inadequate to deter Masching from harassing Powell in the future, as Masching did. When Lieutenant Dallas accused Powell of belonging to a black gang, merely because he sought leave to attend a

meeting of the NABCJ, he received only a one-day suspension.  (Powell Decl. Par. 4-5.)

A jury could easily find that was inadequate to deter Dallas from subsequent harassment

of Mr. Powell, which occurred.  When Superintendent Melvin gave Mr. Powell a

counseling for taking days off which he was entitled to take off for FMLA reasons,

Melvin received no discipline.  (Powell Decl. Par. 13.)  A jury could easily find this

inadequate.  When a memorandum was posted showing Mr. Powell's picture and the

words "fucking nigger" written on it, IDOC took no corrective action.  (Powell Decl.

Pars. 22-23.)  It claims it could not do anything, because it did not know who wrote those

words.  But a jury could easily conclude that IDOC could have done more, warning

correctional officers as a group about that conduct.  After Lieutenant Masching

threatened Mr. Powell by saying "I am going to get you," for which Masching was only

counseled, Masching was assigned to supervise Mr. Powell in the Medium Security Unit,

where he harassed Mr. Powell repeatedly, by hyper-vigilantly observing his work and

spying on him, by filing a false report that Mr. Powell was sleeping on the job, and, more

probably than not, by posting the memo with the words "fucking nigger" on it with an

arrow pointing to Mr. Powell's picture.  (Powell Decl. Pars. 16-21.)  A jury could easily

conclude that assigning Mr. Powell and Lieutenant Masching together, after Masching

had threatened Powell with the words, "I am going to get you," was an inadequate

response to Mr. Powell's need for protection from racial harassment and indicated a

failure to take appropriate and effective remedial action.

      Whether an employer has taken adequate action to correct and prevent acts of

harassment is a jury question, generally not a matter to be decided on a motion for

summary judgment. As the Court of Appeals wrote in *Johnson v. Advocate Health*, --

F.3d --, 2018 WL 2753066 (7th Cir. 2018) at *14:

> Perhaps Advocate's response was adequate given the fairly low bar this court has
> set. *Williams* [*v. Waste Mgt. of Illinois*] 361 F.3d [1021 (7th Cir. 2004)] at 1030.
> But that is a factual determination to be made based on the individual facts and
> circumstances of this case. *Erickson v. Wisc. Dep't of Corr.*, 469 F.3d 600,
> 606 (the determination of employer liability is "fact-specific and must be
> analyzed according to the totality of the circumstances."); *Guess v. Bethlehem
> Steel Corp.*, 913 F.2d 463, 465 (7th Cir. 1990) (noting that the effectiveness of an
> employer's corrective action is a question of fact). In this case, we conclude that it
> could not be determined as a matter of law on a motion for summary judgment.

*See also Loughman v. Mainati Organization, Inc.*, 395 F.3d 404, 407-408 (7th Cir. 2005)

(reversing summary judgment on issue of corrective action); *Kampier v. Emeritus Corp.*,

472 F.3d 930, 942-43 (7th Cir. 2007) (reversing summary judgment on issue of corrective

action); *EEOC v. Int'l Profit Associates, Inc.*, 654 F.Supp. 767, 822, 833-834 (N.D.Ill.

2009) (denying summary judgment on issue of corrective action); and *Sanfelice v.

Dominick's Finer Foods, Inc.*, 899 F.Supp. 372, 376 (N.D.Ill. 1995) (denying summary

judgment on issue of corrective action). IDOC's claim that a jury must find in its favor

on the issue of whether it took appropriate and effective remedial measures to stop the

harassment of Mr. Powell by his supervisors is incorrect. That is a question of fact, to be

decided by the jury.

<u>Conclusion</u>

Clarence Powell suffered through a long course of racial harassment at the hands

of his supervisors. For the reasons set forth above, IDOC's arguments to support the

claim that there are no issues of material fact are incorrect. Summary judgment should be

denied.

Respectfully submitted,

/s/ Paul Strauss
Paul Strauss
Al Hofeld, Jr.
Attorneys for plaintiff Clarence Powell

Paul Strauss
5525 S. Woodlawn Ave.
Chicago, IL   60637
(773) 551-5350
pstr1968@gmail.com

Al Hofeld, Jr.
Al Hofeld, Jr. LLC
30 N. LaSalle St., Suite 3120
Chicago, IL   60602
(773) 241-5844
al@alhofeldlaw.com

## NOTICE OF FILING AND CERTIFICATE OF SERVICE BY ELECTRONIC MEANS

I, Al Hofeld, Jr., attorney for plaintiff, hereby certify that on August 7, 2018, filing and service of the foregoing **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**, was accomplished pursuant to ECF as to Filing Users, and I shall comply with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.

/s/ Al Hofeld, Jr.
Al Hofeld, Jr.

Al Hofeld, Jr., Esq.
30 N. LaSalle Street, Suite #3120
Chicago, Illinois 60602
Phone - 773-241-5844
Fax - 312-372-1766
al@alhofeldlaw.com